UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TAYLOR ENERGY COMPANY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 16-CV-388 (BAH) |
| UNITED STATES DEPARTMENT OF | ) | |
| THE INTERIOR; BUREAU OF OCEAN | ) | |
| ENERGY MANAGEMENT; BUREAU OF | ) | |
| SAFETY AND ENVIRONMENTAL | ) | |
| ENFORCEMENT; UNITED STATES | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY; UNITED STATES COAST | ) | |
| GUARD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants United States Department of Homeland Security, of which the United States Coast Guard is a component, and United States Department of Interior, of which the Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement are components, respectfully move for summary judgment in their favor because they have discharged their Freedom of Information Act obligations.  In support of this motion, Defendants respectfully refer the Court to the accompanying memorandum of law, statement of material facts, and agency declarations and the exhibits thereto.  Also attached is a proposed order.

Date:  November 18, 2016

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar # 415793
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By:  /s/ Marsha W. Yee
MARSHA W. YEE
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
Telephone:  (202) 252-2539
Facsimile:  (202) 252-2599
Email:  Marsha.Yee@usdoj.gov

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TAYLOR ENERGY COMPANY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 16-CV-388 (BAH) |
| UNITED STATES DEPARTMENT OF | ) | |
| THE INTERIOR; BUREAU OF OCEAN | ) | |
| ENERGY MANAGEMENT; BUREAU OF | ) | |
| SAFETY AND ENVIRONMENTAL | ) | |
| ENFORCEMENT; UNITED STATES | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY; UNITED STATES COAST | ) | |
| GUARD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

<u>Page</u>

BACKGROUND ................................................................................................................... 1

I.     The Coast Guard ...................................................................................................... 2

II.    BOEM ...................................................................................................................... 8

III.   BSEE ...................................................................................................................... 10

STANDARDS OF REVIEW ............................................................................................... 12

I.     Motion for Summary Judgment Under Rule 56 ................................................... 12

II.    Discharge of FOIA Obligations .......................................................................... 13

ARGUMENT ....................................................................................................................... 14

I.     Defendants Conducted Adequate Searches ......................................................... 14

       A.    Coast Guard ................................................................................................ 14

       B.    BOEM .......................................................................................................... 17

       C.    BSEE ........................................................................................................... 18

II.    Defendants Properly Invoked FOIA Exemptions to Withhold Documents or
       Information from Portions of Documents ............................................................. 20

       A.    Exemption 5 ................................................................................................ 20

       B.    Exemption 6 ................................................................................................ 23

       C.    Exemption 9 ................................................................................................ 24

III.   Defendants Released All Reasonably Segregable Information ............................ 24

       A.    Coast Guard ................................................................................................ 24

       B.    BOEM .......................................................................................................... 25

       C.    BSEE ........................................................................................................... 25

CONCLUSION .................................................................................................................... 26

In this Freedom of Information Act ("FOIA") case, Defendants United States Department of Homeland Security, of which the United States Coast Guard ("Coast Guard") is a component, and United States Department of Interior, of which the Bureau of Ocean Energy Management ("BOEM") and the Bureau of Safety and Environmental Enforcement ("BSEE") are components, respectfully move the Court to grant summary judgment in their favor because they have discharged their FOIA obligations.

## BACKGROUND

On February 25, 2016, Plaintiff Taylor Energy Company LLC ("Plaintiff" or "Taylor Energy") filed its complaint regarding its FOIA requests to (i) BOEM and BSEE on August 3, 2015, and (ii) the Coast Guard on August 4, 2015.  Compl. ¶¶ 29, 41, 56.  In the underlying FOIA requests, Plaintiff requested, *inter alia*, documents supporting certain statements made in 2015 by the Department of Interior and the Coast Guard on the BSEE website, and materials posted on the BSEE website, relating to an oil spill that occurred in 2004.  *Id.* ¶¶ 4, 20, 26. Plaintiff's FOIA requests sought the following records and information:

1. Please produce and deliver all studies, analyses, memorandum, and correspondence between and among the USCG and the United States Department of the Interior, BSEE, BOEM that support the Joint DOI-USCG statements in Exhibit 1 that:

   a. The "current estimate is that the oil discharge from the site, if left unchecked, could continue for 100 years or more."

   b. "However, because the discharge volume is greater than can reasonably be accounted for by oil released from sediment only, oil is most likely emanating from one or more of the 25 wells."

   c. "Significant uncertainty exists about future events, including discharge sources, cross-flows, pressure recharge in the oil reservoirs, evolving technology, and suitable remedial measures."

      d.   "The specific source(s) of discharge at the MC-20 site are not fully known."

2. Please produce all correspondence (emails, letters, faxes and any other correspondence) relating to the statement that "In August 2014, the UC led a joint aerial observation workshop that included the Coast Guard, BSEE, NOAA, and Taylor Energy's representatives and contractors. At that workshop, the aerial observation methodology used to estimate quantity and rate of discharge was reviewed and revised." Please specifically include the documentation that the methodology used to estimate quantity and rate of discharge was revised.

3. Please produce all correspondence, and FOIA-related correspondence (emails, letters, faxes and any other correspondence) relating to Taylor or MC20 between the USCG and the Associated Press and Michael Kunzelman.

Ex. A to Declaration of Sean R. Gajewski ("CG Decl."); *see also* Ex. A to Declaration of

Natasha Alcantara ("BOEM Decl."); Ex. A to Declaration of Karen Miller ("BSEE Decl.").

## I.   THE COAST GUARD

The Coast Guard initiated its primary search when Lieutenant Commander ("LCDR")

Jeffrey Platt, an officer in Office of Marine Environmental Response Policy International &

Domestic Preparedness Division ("CG-MER-2"), contacted multiple Coast Guard units/offices

seeking additional information and/or responsive documents, including (i) specific offices/units

that provide support to the on-going response; (ii) the operational commands (*e.g.*, Sector New

Orleans and District 8), and (iii) various Coast Guard Headquarters offices that are responsible

for providing support to the field units.  LCDR Platt's efforts included the following Coast Guard

units/offices:  Office of Incident Management & Preparedness ("CG-MER"); Sector New

Orleans ("Sector NOLA"); District 8 Legal, New Orleans; Media Relations Branch (CG-09222);

the National Pollution Funds Center ("NPFC-CL"); and Judge Advocate General and Chief

Counsel's Office of Maritime and International Law, Environment Law Division ("CG-LMI-E").

All of these offices and units were reasonably anticipated to have responsive documents to the request given their involvement in the Taylor Energy Mississippi Canyon 20A ("MC-20A") response.  CG Decl. ¶ 18; *see also id.* ¶¶ 19-20.

At District 8, searches were conducted in Microsoft Outlook by personnel involved in the MC-20A response or the UC using, among others, the following search terms "Taylor," "MC20," "BSEE," "Fact Sheet," and "TEC."  Personnel at District 8 also maintained a folder for all MC-20A documents, which was captured for review.   These files were all provided to LCDR Platt.  CG Decl. ¶ 21.

At Sector NOLA, the Incident Management Division Chief ("IMD Chief"), who was responsible for managing meetings and communications with Taylor Energy, was consulted. The IMD Chief identified five Coast Guard members that potentially could have responsive information because of their communications with Taylor Energy representatives.  All five members were requested to search in Microsoft Outlook for any and all communications with any Taylor Energy personnel. No specific search terms were provided to the individuals. Of the five individuals identified, only three had responsive documents.  These documents were converted to PDF and forwarded. The IMD Chief was also the unit coordinator for Unified Command's March 2014 "Final Risk Assessment and Cost Estimate Workshop" related to the MC-20A.  The IMD Chief had previously saved all presentation files in a folder.  These files were also provided to LCDR Platt for review and potential release under FOIA.  CG Decl. ¶ 21.

Within CG-MER a shared drive was maintained with one folder specifically containing all documents related to Taylor Energy.  Personnel in CG-MER reviewed all the documents in that folder to make a determination as to whether or not they were within the scope of Plaintiff's FOIA request. Additionally, CG-MER personnel maintained folders called "Taylor Energy" in

their Microsoft Outlook archives, which were also reviewed.  Likewise, searches for the keyword "Taylor" were completed in all other Microsoft Outlook files. Any responsive documents to that search were then reviewed to determine their applicability to the requested files.  Finally, CG-MER personnel reviewed hard copy items that had been printed and stored.  CG Decl. ¶ 25.

Media Relations (CG-09222), which maintains the Coast Guard's official media relations website and works with local public affairs offices to provide news to the public provided all correspondence between its office and the Associated Press.  The Public Affairs Officer responsible for the Taylor Energy matter had previously created an electronic folder within Microsoft Outlook called "Taylor Energy," where all correspondence related to the MC-20A was saved.  The files saved in this folder were provided to LCDR Platt for review and potential release under FOIA.  CG Decl. ¶ 26.

A search within the offices of the Judge Advocate General and Chief Counsel of the Coast Guard was conducted for potentially responsive documents.  The attorney from the Office of Maritime and International Law, Environment Law Division ("CG-LMI-E") assigned to the Taylor Energy matter conducted a search of archived emails maintained in a Microsoft Outlook folder that he had previously established, named "Taylor Energy." The attorney, in addition, searched his Microsoft Word documents using "Taylor Energy" as a search term.  All potentially responsive documents were provided for review and potential release under FOIA.  The Office of Claims and Litigation ("CG-LCL") also conducted a search.  CG-LCL maintains an electronic folder in which all electronic documents related to a case are maintained.  CG-LCL maintains such a folder related to the Taylor Energy matter.   After a review of this folder, no responsive documents were identified.  CG Decl. ¶ 27.

NPFC-CL is responsible for managing the Oil Spill Liability Trust Fund.  When oil spills occur, the NPFC provides funding for quick response, compensates claimants for cleanup costs and damages, and takes action to recover costs from responsible parties.  The Chief of the NPFC Legal Division, who worked on the Taylor Energy matter, reviewed his emails to identify responsive documents.  Emails were searched by the term, "Taylor," and in addition, he looked through emails that had been sent by individuals he knew to be associated with the Taylor Energy case.  The Chief of the Natural Resource Damage Division and the Regional Manager at the NPFC also conducted searches of their emails for responsive documents. All responsive emails were provided to LCDR Platt.  Further, the NPFC maintains a case file related to each matter it works.  The case file was reviewed for responsive documents.  No responsive documents were found within the case file.  CG Decl. ¶ 28.

In summary, searches were conducted at all of the Coast Guard units and offices that were likely to have responsive documents to locate all files and folders that were likely to contain relevant documents.  CG Decl. ¶ 29.

After receiving all of the documents, LCDR Platt reviewed over one-thousand documents for responsiveness.  The Coast Guard subsequently reviewed the remaining documents for responsiveness, FOIA exemptions, and privilege.  This review consisted of printing out and examining each document LCDR Platt received to determine its releasability.  If a document was determined to be responsive, the Coast Guard then determined whether it should be withheld due to a FOIA exemption or privilege, including attorney work-product and attorney-client communications.  If a document contained information that was required to be withheld, it was marked accordingly.  Similarly, if a portion of a document was permitted to be withheld, it was

marked for redaction and removed from the releasable files for further processing and preparation.  CG Decl. ¶ 31.

A total of 832 pages were determined to be responsive to Plaintiff's FOIA request.  The Coast Guard withheld 359 pages in their entirety and redacted information from 153 of the pages that it released.  CG Decl. ¶ 34; Ex. E to CG Decl.

Attorneys in the CG-LCL reviewed every page of all the documents that had been deemed responsive but withheld pursuant to a FOIA exemption.  They also reviewed all documents produced in the CG FOIA Response that contained redactions.  In reviewing the material, the attorneys in CG-LCL determined whether there was any non-exempt information in the documents that were redacted or withheld in their entirety that could be reasonably segregated and released.  Ultimately, the attorneys in CG-LCL determined that there was no segregable, non-exempt information in addition to the documents produced in the CG FOIA Response.  CG Decl. ¶ 37.

As detailed in the Coast Guard's Vaughn index ("CG Vaughn Index"), all material that was withheld pursuant to a FOIA exemption contained a description of the withheld text and a justification for same.  In summary, any material that contained clearly identifiable privacy interests was marked as 5 U.S.C. § 552(b)(6).  All material that was pre-decisional and deliberative was labeled on the CG Vaughn Index as 5 U.S.C. § 552(b)(5).  Similarly, all pages containing factual or deliberative material that included attorney work-product or protected by the attorney-client privilege were marked as 5 U.S.C. § 552(b)(5).  CG Decl. ¶ 41; Ex. H to CG Decl.

As detailed in the CG Vaughn Index, a majority of the documents that were withheld in their entirety were related to two decisions the United States Government and the Coast Guard

were making during the relevant time period: (1) whether a legal mechanism existed that would relieve Taylor Energy of its responsibilities as a responsible party for the spill at the MC-20A site, *see e.g.*, Exhibit H, USCG0556-0561; and (2) what material should be included in the USG Views Document. *See e.g.*, Exhibit H, USCG0573-0575.  Both of these decisions required inter- and intra-agency deliberations between Coast Guard personnel and other United States Government agencies.  The documents withheld in their entirety memorialized those discussions and contained opinions, comments, edits, and advice of the Coast Guard and other agencies that did not reflect the ultimate decisions to those issues being worked on by the United States Government.  CG Decl. ¶ 42; Ex. H to CG Decl.

Furthermore, almost all of the emails withheld in their entirety contained attorney work-product or are protected by the attorney-client privilege. *See e.g.*, Exhibit H, USCG0477-0490. In addition to the description and justification of each document withheld in its entirety, if the document was an email, the Coast Guard provided the sender and recipient(s) name on the CG Vaughn Index.  Many of the senders and recipients of those emails were Coast Guard attorneys working on the MC-20A response.  For example, among the names listed the following people are attorneys:  RADM Steven Poulin; Calvin Lederer; CAPT Patrick McGuire; CAPT John Luce; CAPT Benes Aldana; Curtis Borland; Brian Judge; Thomas VanHorn; Derek Capizzi; Steve Venckus; Rachel Hopp; Michaela Noble; Jeanmarie Nicholson; Jason Barbeau (DOJ); Anna Thode (DOJ); Eric Andreas (DOI); and Lori Monrow (DOI).  As such, any correspondence that included these attorneys and constituted either attorney-client communications or attorney work-product were withheld in their entirety. None of the non-privileged material was reasonably segregable.  CG Decl. ¶ 43; Ex. H to CG Decl.

Finally, many of the documents withheld in their entirety are forwards of emails that were sent to different people (*i.e.*, the same email received from people at different units), but contain additional comments or questions from the most recent recipient.  The near duplicate emails were not culled because they were provided to LCDR Platt by different custodians.  As such, they were documented on the CG Vaughn Index as separate line items.  CG Decl. ¶ 39; Ex. H to CG Decl.

"[T]he Coast Guard has released all non-exempt material respons[ive] to the FOIA [r]equest in accordance with the requirements of the FOIA."  CG Decl. ¶ 45.

## II.     BOEM

Under BOEM FOIA's guidance, BOEM employees conducted searches for material responsive to Plaintiff's FOIA request.  For Items 1 and 2 of the request, BOEM FOIA determined that responsive records, if any, would be located in the Gulf of Mexico Region (GOMR), Office of the Regional Director (ORD), because BOEM FOIA believed that the GOMR ORD was the office that was responsible for coordinating with other agencies regarding release of information to the public pertaining to Taylor and MC-20.  BOEM FOIA requested searches from Renee Orr, Acting Regional Director, GOMR, and Michael Celata, Deputy Regional Director, GOMR because BOEM FOIA believed that these agency officials would have been responsible for coordination of any agency review of the Fact Sheets posted on the BSEE website and included as Exhibit 1 of the FOIA request.  The search term used was "Taylor," and the search was not limited by date.  BOEM Decl. ¶ 31.

For Item 3 of the request, BOEM FOIA determined that, because the information sought all FOIA-related and other communications between BOEM and BSEE and the Associated Press and Michael Kunzelman, responsive records, if any, would be located in BOEM HQ and GOMR

FOIA Offices, and BOEM HQ's and GOMR's Office of Public Affairs. In addition to conducting the search of BOEM HQ FOIA herself, then-Bureau FOIA Officer Rosemary Melendy had the following employees conduct searches of their records:  Caren Madsen, Chief, Office of Public Affairs; Connie Gilette, Deputy Chief of Public Affairs and Media Relations Manager; John Filostrat, GOMR Public Affairs; Steve Waddell, Chief, GOMR FOIA Office, and Natasha Alcantara, Government Information Specialist, BOEM HQ FOIA Office.  The search terms used were "Associated Press," "@ap.org," "Taylor," and "00120."  In accordance with Plaintiff's request, the time limitation was the year preceding the request.  BOEM Decl. ¶ 32.

As a result of the above searches, BOEM employees produced approximately 1,800 pages of material they considered potentially responsive.  BOEM Decl. ¶ 33.  Approximately 1,669 pages were determined by BOEM FOIA not to be responsive to Plaintiff's request.  BOEM Decl. ¶ 35.

By letter dated March 2, 2016, BOEM HQ FOIA responded in part to Plaintiff's request, producing eleven pages in full and two pages in part that were responsive to Item 3 of Plaintiff's request.  The two partially withheld pages contained a personal telephone number withheld under Exemption 6.  BOEM Decl. ¶ 36; Ex. E to BOEM Decl.

By letter dated April 6, 2016, BOEM HQ FOIA provided a final response to the Plaintiff's request, withholding in full 163 pages of material responsive to Item 1 of the request under the Deliberative Process, Attorney Work Product, and Attorney-Client Communication Privileges of Exemption 5.  BOEM FOIA also determined that it had no records responsive to Item 2 of the request.  BOEM FOIA has released all non-exempt material responsive to Plaintiff's request in accordance to the requirements of the FOIA.  BOEM Decl. ¶ 37; Ex. F to BOEM Decl.

BOEM's Vaughn index details and justifies BOEM's redactions.  The *Vaughn* index includes a detailed description of each document withheld in part or in full, the FOIA exemption claimed and the justification for that exemption.  For example, multiple internal email chains described in the *Vaughn* are withheld in part under Exemption 5's deliberative process, confidential attorney-client communication, and attorney work product privileges.  Multiple email attachments, consisting of internal agency drafts which include comments by agency officials and attorneys are withheld under Exemption 5's deliberative process and confidential attorney-client communication privileges.  BOEM Decl. ¶ 38; Ex. G to BOEM Decl.

## III.    BSEE

Under the guidance of Karen Miller, BSEE's GOMR FOIA Office coordinated and directed the search for materials responsive to Plaintiff's request.  Due to the nature of the information requested, Miller determined that documents responsive to this request would potentially be located in BSEE HQ or any part of BSEE's GOMR Office, including the GOMR District Offices (which include New Orleans, Houma, Lafayette, Lake Jackson, and Lake Charles, Louisiana), because these were the offices involved with the website statements and joint aerial observation workshop referenced in Plaintiff's request.  BSEE Decl. ¶ 14.

BSEE FOIA coordinated with the Regional Director, the Deputy Regional Director (a member of the Unified Command team), the Regional Technical Advisor; the Chief of the Well Analysis Section, the Unit Supervisor of the Resource Conservation Section, the Regional Supervisor of Regional Field Operations, the Chief of the Office of Structural and Technical Support, and BSEE's Associate Director for Strategic Engagement to conduct searches of their records for materials responsive to Plaintiff's request, because BSEE FOIA believed these were

the agency employees involved with the website statements and joint aerial observation workshop referenced in Plaintiff's request.  BSEE Decl. ¶ 15.

As to Parts 1 and 2 of the request, the BSEE officers listed above searched all their electronic and paper records, and directed those employees who report to them and who they reasonably believed might potentially have responsive records to search their records as well. Search terms used included the following:  Taylor, TEC, Unified Command Center, FRAC, ERA or Ecological Risk Assessment, Sheen, and Flyover.  The e-mail searches spanned two e-mail systems, since BSEE changed systems in 2012.  BSEE Decl. ¶ 16.

As to Part 3 of the request, BSEE FOIA searched both the BSEE HQ and GOMR FOIA Offices for responsive records.  As anticipated, the responses to Parts 1 and 2 of the request overlapped greatly with the response to the AP request, and as such also address Part 3 of Plaintiff's request.  The response to the FOIA request from AP that underlies this part of Plaintiff's request is not yet complete.  BSEE FOIA has, however, provided Plaintiff with all the documents processed and released to the AP to date in response to their request.  BSEE FOIA has determined that some of the remaining documents that are responsive to the AP's request may contain Plaintiff's confidential commercial information.  As such, in accordance with DOI FOIA regulations, these documents will be provided to Plaintiff for consultation concerning whether Plaintiff could potentially suffer competitive harm as a result of the potential release to AP, and whether the material should thus be withheld under Exemption 4.  BSEE Decl. ¶ 17.

BSEE FOIA ultimately collected approximately 80,000 pages of potentially responsive material, which it processed for responsiveness, potentially exempt material, and segregability. BSEE Decl. ¶ 18.  BSEE FOIA has released all non-exempt material responsive to Plaintiff's request in accordance with the requirements of the FOIA.  In total, BSEE produced 15,377 pages

11

of responsive material in full to Plaintiff in response to its FOIA request. BSEE withheld a total of 596 pages of responsive material in part or in full under one or more of FOIA's exemptions. BSEE Decl. ¶ 28.

All of the documents withheld by BSEE, whether in full or in part, have been carefully reviewed on a page by page, line by line basis in an attempt to identify reasonably segregable, non-exempt information. It has been determined by BSEE FOIA that no further segregation of meaningful information in the withheld documents is possible without disclosing information that warrants protection under FOIA's statutory exemptions. The only information withheld from Plaintiff is information that is entitled to protection from disclosure. BSEE Decl. ¶ 29.

BSEE's November 17 *Vaughn* Index identifies and describes each document from which information was withheld, identifies the specific FOIA exemption or exemptions claimed, and explains the rationale for applying the FOIA exemption or exemptions to the information withheld. BSEE Decl. ¶ 31.

## STANDARDS OF REVIEW

### I.    MOTION FOR SUMMARY JUDGMENT UNDER RULE 56

Under Rule 56 of the Federal Rules of Civil Procedure, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## II.   DISCHARGE OF FOIA OBLIGATIONS

"'FOIA cases are typically and appropriately decided on motions for summary judgment.'"   *Ryan v. Fed. Bureau of Investigation*, 174 F. Supp. 3d 486, 490 (D.D.C. 2016) (internal quotation marks omitted).   "When an agency moves for summary judgment on the grounds that it has discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester, and only after the agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate."   *Id.*

"An agency will be granted summary judgment on the adequacy of its search if it 'show[s] beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents.'"   *Id.*   "Adequacy 'is judged by a standard of reasonableness and depends, not surprisingly, on the facts of each case.'"   *Id.*   "[A] search may be reasonable if it includes all systems 'that are likely to turn up the information requested.'"   *Id.* at 490-91.

"To meet its burden and show adequacy, 'the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith.'"   *Id.* at 491.   "These declarations are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."   *Id.* (internal quotation marks omitted).   "An agency can show reasonableness in its affidavit by setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."   *Id.* (internal quotation marks omitted).

"The agency bears the burden of establishing that a claimed exemption applies."   *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).   "The agency may carry that burden by submitting affidavits that 'describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* "Agency affidavits sometimes take the form of a '*Vaughn* index,' but there is 'no fixed rule' establishing what such an affidavit must look like[.]" *Id.* (citation omitted).

"If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting [or redacting] the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions." *Henderson v. U.S. Dep't of Justice*, 157 F. Supp. 3d 42, 51 (D.D.C. 2016) (citing 5 U.S.C. § 552(b)).

## ARGUMENT

The Court should grant summary judgment in Defendants' favor because they have discharged their FOIA obligations:  They each conducted an adequate search, properly invoked exemptions to withhold certain documents or portions of certain documents, and released all non-exempt, responsive documents.

## I.   DEFENDANTS CONDUCTED ADEQUATE SEARCHES

### A.   Coast Guard

The Coast Guard initiated its primary search when LCDR Platt contacted multiple Coast Guard units/offices seeking additional information and/or responsive documents.  Defs.' Statement of Material Facts ("SMF") ¶ 2.  LCDR Platt's efforts included contacting the following Coast Guard units/offices:  CG-MER; Sector NOLA; District 8 Legal, New Orleans; Media Relations Branch (CG-09222); the NPFC-CL; and CG-LMI-E.  *Id.*  All of these offices and units were reasonably anticipated to have responsive documents to the request given their involvement in the Taylor Energy MC-20A response.  *Id.*

At District 8, searches were conducted in Microsoft Outlook by personnel involved in the MC-20A response or the Unified Command using, among others, the following search terms "Taylor," "MC20," "BSEE," "Fact Sheet," and "TEC."  SMF ¶ 3.  Personnel at District 8 also maintained a folder for all MC-20A documents, which was captured for review, and those were all provided to LCDR Platt.  *Id.*

At Sector NOLA, the IMD Chief, who was responsible for managing meetings and communications with Taylor Energy, was consulted.  SMF ¶ 4.  The IMD Chief identified five Coast Guard members that potentially could have responsive information because of their communications with Taylor Energy representatives.  *Id.*  All five members were requested to search in Microsoft Outlook for any and all communications with any Taylor Energy personnel. *Id.*  No specific search terms were provided to the individuals.  *Id.*  Of the five individuals identified, only three had responsive documents.  *Id.*  These documents were converted to PDF and forwarded.  *Id.*  The IMD Chief was also the unit coordinator for Unified Command's March 2014 "Final Risk Assessment and Cost Estimate Workshop" related to the MC-20A.  *Id.*  The IMD Chief had previously saved all presentation files in a folder.  *Id.*  These files were also provided to LCDR Platt for review and potential release under FOIA.    *Id.*

CG-MER maintained a shared drive with one folder specifically containing all documents related to Taylor Energy.  SMF ¶ 5.  Personnel in CG-MER reviewed all the documents in that folder to determine whether they were within the scope of the FOIA request.  *Id.*  Additionally, CG-MER personnel maintained folders called "Taylor Energy" in their Microsoft Outlook archives, which were also reviewed.  *Id.*  Likewise, searches for the keyword "Taylor" were completed in all other Microsoft Outlook files.  *Id.*  Any responsive documents to that search

were then reviewed to determine their applicability to the requested files.  *Id.*  Finally, CG-MER personnel reviewed hard copy items that had been printed and stored.  *Id.*

Media Relations (CG-09222), which maintains the Coast Guard's official media relations website and works with local public affairs offices to provide news to the public provided all correspondence between its office and the Associated Press.  SMF ¶ 6.  The Public Affairs Officer responsible for the Taylor Energy matter had previously created an electronic folder within Microsoft Outlook called "Taylor Energy," where all correspondence related to the to the MC-20A was saved.  *Id.*  The files saved in this folder were provided to LCDR Platt for review and potential release under FOIA.  *Id.*

A search within the offices of the Judge Advocate General and Chief Counsel of the Coast Guard was conducted for potentially responsive documents.  SMF ¶ 7.  The attorney from the Office of Maritime and International Law, Environment Law Division ("CG-LMI-E") assigned to the Taylor Energy matter conducted a search of archived emails maintained in a Microsoft Outlook folder that he had previously established, named "Taylor Energy."  *Id.*  The attorney, in addition, searched his Microsoft Word documents using "Taylor Energy" as a search term.  *Id.*  All potentially responsive documents were provided for review and potential release under FOIA.  *Id.*  The CG-LCL also conducted a search.  *Id.*  CG-LCL maintains an electronic folder in which all electronic documents related to a case are maintained.  *Id.*  CG-LCL maintains such a folder related to the Taylor Energy matter.  *Id.*  After a review of this folder, no responsive documents were identified.  *Id.*

The Chief of the NPFC Legal Division, who worked on the Taylor Energy matter, reviewed his emails to identify responsive documents.  SMF ¶ 8.  He searched his emails by the term, "Taylor," and also looked through emails that had been sent by individuals he knew to be

associated with the Taylor Energy case.  *Id.*  The Chief of the Natural Resource Damage

Division and the Regional Manager at the NPFC also conducted searches of their emails for

responsive documents.  *Id.*  All responsive emails were provided to LCDR Platt.  *Id.*  Further, the

NPFC maintains a case file related to each matter it works.  *Id.*  The case file was reviewed for

responsive documents.  No responsive documents were found within the case file.  *Id.*

 In summary, searches were conducted at all of the Coast Guard units and offices that

were likely to have responsive documents to locate all files and folders that were likely to

contain relevant documents.  SMF ¶ 9.

 Accordingly, the Court should uphold the adequacy of the Coast Guard's search.

### B. BOEM

 Under BOEM FOIA's guidance, BOEM employees conducted searches for material

responsive to Plaintiff's request.  SMF ¶ 19.  For Items 1 and 2 of the request, BOEM FOIA

determined that responsive records, if any, would be located in the GOMR ORD, because

BOEM FOIA believed that the GOMR ORD was the office that was responsible for coordinating

with other agencies regarding release of information to the public pertaining to Taylor and MC-

20.  *Id.*  BOEM FOIA requested searches from Renee Orr, Acting Regional Director, GOMR,

and Michael Celata, Deputy Regional Director, GOMR because BOEM FOIA believed that these

agency officials would have been responsible for coordination of any agency review of the Fact

Sheets posted on the BSEE website and included as Exhibit 1 of the FOIA request.  *Id.*  The

search term used was "Taylor," and the search was not limited by date.  *Id.*

 For Item 3 of the request, BOEM FOIA determined that, because the information sought

all FOIA-related and other communications between BOEM and BSEE and the Associated Press

and Michael Kunzelman, responsive records, if any, would be located in BOEM HQ and GOMR

FOIA Offices, and BOEM HQ's and GOMR's Office of Public Affairs.  SMF ¶ 21.  In addition

to conducting the search of BOEM HQ FOIA herself, Bureau FOIA Officer Rosemary Melendy

had the following employees conduct searches of their records:  Caren Madsen, Chief, Office of

Public Affairs; Connie Gilette, Deputy Chief of Public Affairs and Media Relations Manager;

John Filostrat, GOMR Public Affairs; Steve Waddell, Chief, GOMR FOIA Office, and Natasha

Alcantara, Government Information Specialist, BOEM HQ FOIA Office.  *Id.*  The search terms

used were "Associated Press," "@ap.org," "Taylor," and "00120."  *Id.*  In accordance with

Plaintiff's request, the time limitation was the year preceding the request.  *Id.*

Accordingly, the Court should uphold the adequacy of BOEM's search.

## C.     BSEE

Under the guidance of Karen Miller, BSEE's GOMR FOIA Office coordinated and

directed the search for materials responsive to Plaintiff's request.  SMF ¶ 27.  Due to the nature

of the information requested, Miller determined that documents responsive to this request would

potentially be located in BSEE HQ or any part of BSEE's GOMR Office, including the GOMR

District Offices (which include New Orleans, Houma, Lafayette, Lake Jackson, and Lake

Charles, Louisiana), because these were the offices involved with the website statements and

joint aerial observation workshop referenced in Plaintiff's request.  *Id.*

BSEE FOIA coordinated with the Regional Director, the Deputy Regional Director (a

member of the Unified Command team), the Regional Technical Advisor; the Chief of the Well

Analysis Section, the Unit Supervisor of the Resource Conservation Section, the Regional

Supervisor of Regional Field Operations, the Chief of the Office of Structural and Technical

Support, and BSEE's Associate Director for Strategic Engagement to conduct searches of their

records for materials responsive to Plaintiff's request, because BSEE FOIA believed these were

the agency employees involved with the website statements and joint aerial observation workshop referenced in Plaintiff's request.  SMF ¶ 28.

As to Parts 1 and 2 of the request, the BSEE officers listed above searched all their electronic and paper records, and directed those employees who report to them and who they reasonably believed might potentially have responsive records to search their records as well. SMF ¶ 29.  Search terms used included the following:  Taylor, TEC, Unified Command Center, FRAC, ERA or Ecological Risk Assessment, Sheen, and Flyover.  *Id.*  The e-mail searches spanned two e-mail systems, since BSEE changed systems in 2012.  *Id.*

As to Part 3 of the request, BSEE FOIA searched both the BSEE HQ and GOMR FOIA Offices for responsive records.  SMF ¶ 30.  As anticipated, the responses to Parts 1 and 2 of the request overlapped greatly with the response to the AP request, and as such also address Part 3 of Plaintiff's request.  *Id.*  The response to the FOIA request from AP that underlies this part of Plaintiff's request is not yet complete.  *Id.*  BSEE FOIA has, however, provided Plaintiff with all the documents processed and released to the AP to date in response to their request.  *Id.*  BSEE FOIA has determined that some of the remaining documents that are responsive to the AP's request may contain Plaintiff's confidential commercial information.  *Id.*  As such, in accordance with DOI FOIA regulations, these documents will be provided to Plaintiff for consultation concerning whether Plaintiff could potentially suffer competitive harm as a result of the potential release to AP, and whether the material should thus be withheld under Exemption 4.  *Id.*

Accordingly, the Court should uphold the adequacy of BSEE's search.

**II.   DEFENDANTS PROPERLY INVOKED FOIA EXEMPTIONS TO WITHHOLD DOCUMENTS OR INFORMATION FROM PORTIONS OF DOCUMENTS**

**A.   Exemption 5**

FOIA's Exemption 5 provides for the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "The scope of Exemption 5 is properly determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters."  *Pub. Employees for Envtl. Responsibility v. U.S. Envtl. Prot. Agency*, No. 15-CV-1012 (CRC), 2016 WL 5676298, at *2 (D.D.C. Sept. 30, 2016) (internal quotation marks omitted).  "Consequently, although it is not limited to these categories, the exemption protects 'predecisional deliberative memoranda,' 'attorney work product,' and . . . 'attorney-client communications.'"  *Id.*

The deliberative process privilege "protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated, so as to encourage open and frank discussion among government officials[.]"  *Wright v. Admin. for Children & Families*, No. 15-218, 2016 WL 5922293, at *9 (D.D.C. Oct. 11, 2016) (internal quotation marks and citations omitted).  "'To qualify for the deliberative process privilege, an intra-agency [communication] must be both pre-decisional and deliberative.'"  *Id.*  "In general, a document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made."  *Id.* (internal quotation marks omitted).  "'[D]eliberative' in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue[.]"  *Id.*

"Courts have long recognized that materials prepared by one's attorney in anticipation of litigation are generally privileged from discovery by one's adversary." *Nat'l Ass'n of Criminal Def. Lawyers v. U.S. Dep't of Justice*, 829 F.3d 741, 745 (D.C. Cir. 2016). "The attorney work-product privilege applies in both civil and criminal cases." *Id.* "The privilege aims primarily to protect the integrity of the adversary trial process itself," by "provid[ing] a working attorney with a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Id.* (internal quotation marks omitted). The Court of Appeals for the District of Columbia has "long required a case-specific determination that a particular document in fact was prepared in anticipation of litigation before applying the privilege to government records." *Id.* In ascertaining whether a document was prepared in anticipation of litigation, the Court of Appeals has "applied a because of test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* at 746 (internal quotation marks omitted). "For that standard to be met, the attorney who created the document must have had a subjective belief that litigation was a real possibility, and that subjective belief must have been objectively reasonable." *Id.* (internal quotation marks omitted).

"The attorney-client privilege protects confidential communications from client to attorney, and from attorney to client." *Pub. Employees for Envtl. Responsibility*, 2016 WL 5676298, at *2. "Without protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice." *Id.* "The [attorney-client] privilege applies only to '[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance,' and to an attorney's 'communication [to the client] based on confidential information provided by the

client[.]'"  *Id.* at *3 (citation omitted).  "In this context, the 'client' is the agency and its

officials."  *Id.*  "And those officials may be either 'high-level agency personnel' or 'lower-

echelon employees.'"  *Id.*

The Coast Guard, BOEM and BSEE each withheld records or portions of records that are

protected under the deliberative process privilege, attorney work product, and/or attorney-client

privilege.  For example, the Coast Guard withheld documents relating to two decisions the

United States Government and the Coast Guard were making during the relevant time period:

(i) whether a legal mechanism existed that would relieve Taylor Energy of its responsibilities as

a responsible party for the spill at the MC-20A site; and (ii) what material should be included in

the USG Views Document.  SMF ¶ 15.  These decisions required inter- and intra-agency

deliberations between Coast Guard personnel and other United States Government agencies.  *Id.*

The documents withheld in their entirety memorialized those discussions and contained opinions,

comments, edits, and advice of the Coast Guard and other agencies that did not reflect the

ultimate decisions to those issues being worked on by the United States Government.  *Id.*

In addition, the Coast Guard withheld emails that contained attorney work-product or are

protected by the attorney-client privilege.  SMF ¶ 16.  In addition to the description and

justification of each document withheld in its entirety, if the document was an email, the Coast

Guard provided the sender and recipient(s) name on the CG Vaughn Index.  *Id.*  Many of the

senders and recipients of those emails were Coast Guard attorneys working on the MC-20A

response.  *Id.*  As such, any correspondence that included these attorneys and constituted either

attorney-client communications or attorney work-product were withheld in their entirety.  *Id.*

None of the non-privileged material was reasonably segregable.  *Id.*

Defendants respectfully refer the Court to the Vaughn indexes for additional instances where Exemption 5 was asserted.

### B. Exemption 6

Under Exemption 6, FOIA exempts from disclosure information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see also Henderson v. U.S. Dep't of Justice*, 157 F. Supp. 3d 42, 50 (D.D.C. 2016) (same). "The Court's first task is to determine whether the responsive records are personal, medical or similar files." *Henderson*, 157 F. Supp. 3d at 50. "If so, the Court next determines whether disclosure of the third-party information 'would constitute a clearly unwarranted invasion of personal privacy.'" *Id.* "This second inquiry requires [the Court] to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Id.* (internal quotation marks omitted). "The only relevant public interest in this context harkens back to the principal purpose of the FOIA: to 'shed[ ] light on an agency's performance of its statutory duties[.]'" *Id.*

"Protection under Exemption 6 . . . 'cover[s] detailed Government records on an individual which can be identified as applying to that individual.'" *Id.* "In other words, Exemption 6 is designed 'to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information' maintained in government records, regardless of 'the label on the file[.]'" *Id.* (citation omitted).

"It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant." *Coleman v. Lappin*, 607 F. Supp. 2d 15, 22 (D.D.C. 2009). "Courts have specifically held that Exemption 6 covers 'such items as a person's name, address, place of birth, employment history, and telephone

number[,] notwithstanding the nature of the document or file within which this information appears." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 141 (D.D.C. 2014) (citation omitted); *see also Coleman*, 607 F. Supp. 2d at 22 (holding that, *inter alia*, individuals' Social Security numbers and dates of birth were properly withheld under Exemption 6).

The Coast Guard, BOEM and BSEE each withheld records or portions of records pursuant to Exemption 6. For example, BOEM withheld a personal telephone number on two pages under Exemption 6. SMF ¶ 24. Defendants respectfully refer the Court to the Vaughn indexes for additional instances where Exemption 6 was asserted.

## C.     Exemption 9

Exemption 9 protects "geological and geophysical information and data, including maps, concerning wells." 5 U.S.C. § 552(b)(9). "This exemption has rarely been invoked or interpreted[.]" *AquAlliance v. U.S. Bureau of Reclamation*, 139 F. Supp. 3d 203, 209 (D.D.C. 2015).

BSEE's November 17 Vaughn index asserts Exemption 9 for three documents that were withheld in part, and states, "[t]he information being withheld is the interpretative analysis" of one or more BSEE staff petroleum engineers regarding certain oil wells. Ex. N to BOEM Decl.

## III.     DEFENDANTS RELEASED ALL REASONABLY SEGREGABLE INFORMATION

### A.     Coast Guard

As shown by the Coast Guard's declaration and Vaughn index, the Coast Guard examined and processed records responsive to Plaintiff's FOIA request, redacted exempt information, withheld exempt records, and produced the remainder of the records. Attorneys in the Coast Guard's Office of Claims and Litigation reviewed (i) each page of the documents that had been deemed responsive but withheld pursuant to a FOIA exemption, and (ii) all documents

produced in the CG FOIA Response that contained redactions.  SMF ¶ 13.  In the course of their review, these attorneys determined whether there was any non-exempt information in the documents that were redacted or withheld in their entirety that could be reasonably segregated and released.  *Id.*  Ultimately, these attorneys determined that there was no segregable, non-exempt information in addition to the documents produced in the CG FOIA Response.  *Id.* "[T]he Coast Guard has released all non-exempt material respons[ive] to the FOIA [r]equest in accordance with the requirements of the FOIA."  SMF ¶ 18.

> ### B.      BOEM

As shown by BOEM's declaration and Vaughn index, BOEM examined and processed records responsive to Plaintiff's FOIA request, redacted exempt information, withheld exempt records, and produced the remainder of the records.  "BOEM has released all non-exempt material responsive to Plaintiff's request in accordance with the requirements of the FOIA." SMF ¶ 25.

> ### C.      BSEE

As shown by BSEE's declaration and Vaughn index, BSEE examined and processed records responsive to Plaintiff's FOIA request, redacted exempt information, withheld exempt records, and produced the remainder of the records.  "BSEE FOIA has released all non-exempt material responsive to Plaintiff's request in accordance with the requirements of the FOIA." SMF ¶ 32.

"All of the documents withheld by BSEE, whether in full or in part, have been carefully reviewed on a page by page, line by line basis in an attempt to identify reasonably segregable, non-exempt information."  SMF ¶ 33.  BSEE FOIA "determined that no further segregation of meaningful information in the withheld documents is possible without disclosing information

that warrants protection under FOIA's statutory exemptions." *Id.* "The only information

withheld from Plaintiff is information that is entitled to protection from disclosure." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in Defendants' favor.

Date:  November 18, 2016

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar # 415793
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division

By:_ /s/ Marsha W. Yee_____
MARSHA W. YEE
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
Telephone:  (202) 252-2539
Facsimile:  (202) 252-2599
Email:  Marsha.Yee@usdoj.gov

*Counsel for Defendants*